UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

DEBRA LYNN KERSH,                §
INDIVIDUALLY AND ON BEHALF       §
OF THE ESTATE OF JAMES R.        §        Cv. No. SA:13-CV-00052-DAE
KERSH,                           §
                                 §
        Plaintiff,               §
                                 §
vs.                              §
                                 §
UNITEDHEALTHCARE                 §
INSURANCE COMPANY, a             §
Connecticut corporation; PAYCHEX,§
INC., a Delaware Corporation; and§
DENNIS WALKER, an individual,    §
                                 §
        Defendants.              §

ORDER: (1) GRANTING IN PART AND DENYING IN PART DEFENDANT
PAYCHEX'S MOTION TO DISMISS; (2) DENYING DEFENDANT
PAYCHEX'S MOTION TO STRIKE JURY TRIAL DEMAND

        On May 3, 2013, the Court heard oral argument on the Motion to

Dismiss filed by Defendant Paychex, Inc., and joined by Defendants

UnitedHealthcare Insurance Company and Dennis Walker (collectively,

"Defendants"). (Doc. # 5.)  Lawrence Smith, Esq., Michael Diksa, Esq., and

Michael Klein, Esq., appeared on behalf of Defendants.  Lon Packard, Esq., and

Michael Packard, Esq., appeared on behalf of Plaintiff Debra Lynn Kersh.  Also

before the Court is Defendant Paychex's Motion to Strike Jury Trial Demand.

(Doc. # 6.)  After considering the memoranda in support of and in opposition to the

1

Motions, and in light of the parties' arguments at the hearing, the Court, for the reasons that follow, **GRANTS IN PART AND DENIES IN PART** Paychex's Motion to Dismiss (doc. # 5) and **DENIES** Paychex's Motion to Strike Jury Trial Demand (doc. # 6).

<u>BACKGROUND</u>

Plaintiff Debbie Kersh ("Plaintiff") is the widow of Randy Kersh ("Mr. Kersh"). Mr. Kersh received a formal employment proposal from Salto Systems, Inc. ("Salto") on July 6, 2011. (Compl. ¶ 14; <u>id.</u> Ex. A.) The proposal outlined the job duties and compensation package, which included a fringe benefits plan, stating: "Life Insurance is optional. Not covered by Salto." (<u>Id.</u>) Mr. Kersh accepted the offer and began working for Salto on July 18, 2011. (Compl. ¶ 15.) On the same day, Mr. Kersh began working with Linda Leimbach ("Leimbach"), Salto's Director of Human Resources, on various health benefits issues. (<u>Id.</u> ¶ 16.)

Defendant Paychex, Inc. ("Paychex") is a payroll and human resources company that manages Salto's employee benefits, and it is also a broker for Defendant UnitedHealthcare ("UHC"). Defendant Dennis Walker ("Walker") was Salto's contact person at Paychex, and he answered Mr. Kersh's questions about benefits as they were relayed to him through Leimbach. (<u>Id.</u> ¶ 16; <u>id.</u> Ex. C.)

After Mr. Kersh's questions about health benefits were resolved, he began inquiring about purchasing life insurance through Paychex. (<u>Id.</u> ¶ 18.) By

email dated July 26, 2011, sent to Walker and Nicole Baldo (another Paychex employee), Leimbach asked if life or disability coverage was available for Salto employees.  (Id. ¶ 18; id. Ex. C.)  On July 27, 2011, Walker responded to Leimbach that Salto did not offer disability benefits.  (Id. Ex. C.)  By email dated August 1, 2011, Leimbach requested "information on life insurance cost."  (Id.)  In his email response dated August 2, 2011, at 11:29 a.m., Walker wrote that the life insurance premium was $4.95 and that "[n]ew members should fax their enrollment forms to (585) 249-4029.  Those go directly to our enrollment team here at Paychex."  (Id.)  Leimbach responded at 12:50 p.m., asking, "[I]s that $4.95 per thousand coverage, or how does that work?"  (Id.)  Walker responded, "That is monthly."  (Id.)  Minutes later, Leimbach wrote Walker again, saying, "Sorry, Dennis, I am missing something here—monthly for how much coverage?" (Id.)  Walker responded at 2:08 p.m., attaching a copy of the Salto Plan renewal, which stated the terms of the life insurance policy Salto offered through UHC. (Id.)  His email said: "On page 9 of the attached 5/1 renewal you can see that your group offers $15,000 in total benefit.  The cost per month comes out to $4.95 because you multiply the sum of 0.04 and 0.29 (0.33) times 15 to get the premium."  (Id. (emphasis added).)

Plaintiff states that "all" of the August 2 emails, which she attaches to the Complaint, were forwarded to Mr. Kersh.  (Compl. ¶ 19; doc. # 20 ("Resp.") ¶ 6.)  At 3:18 p.m., Leimbach wrote an email to Mr. Kersh that said:

Hi Randy,

The life insurance offered by Salto via Paychex costs $4.95 per month for $15,000 payout, [sic] if you are interested let me know.

The completed health insurance enrollment should be faxed to (585) 249-4029.

Let me know if you need anything else.

Linda

(Compl. Ex. C.)

A few days after this exchange, on August 8, 2011, Leimbach emailed Walker once more, saying:  "Hi Dennis, appreciate you sending this over, I will review sometime this week or next.  Is there a special form for signing up for the life insurance, and to confirm, is it $4.95 per $15K per pay period?  Thanks!"  (Id.) Later that day, Walker responded, "The $4.95 premium is per month."  (Id.) Plaintiff alleges that she and Mr. Kersh, to whom Leimbach forwarded this email, understood Walker to be clarifying that the premium was, indeed, $4.95 per $15,000 in coverage, but that it was to be paid per month rather than per pay period.  (Compl. ¶ 20; Resp. ¶ 6.)  A few minutes later, Leimbach asked Walker to email her his number so that she could call him.  (Compl. Ex. C.)

4

Believing that they could purchase life insurance in $15,000 increments at a rate of $4.95 per $15,000 in coverage, Plaintiff and Mr. Kersh calculated by hand that they could obtain $750,000 in coverage for $247.50 per month.  (See Compl. Ex. C.)

On August 18, 2011, Plaintiff and Mr. Kersh jointly completed an Employee Enrollment Form ("EE Form"), "which was on UHC letterhead." (Compl. ¶ 21; id. Ex. B.)  Plaintiff and Mr. Kersh signed the EE Form and dated it July 18, 2011.[1]  (Compl. Ex. B.)  Section C, entitled "Product Selection," contained the following directions:

> Please check the box for each coverage you or your dependents are enrolling in.  If your employer offers a choice of plans, indicate which plan you are selecting.  Indicate the dollar amount selected for the Life and Accidental Death & Dismemberment (AD&D), Supplemental Life, Short-Term Disability (STD), and Long-Term Disability (LTD) Plans.  Benefit offerings are dependent upon employer selection.

(Id. (emphases added).)  Plaintiff and Mr. Kersh "checked the box indicating that they wanted Basic Life Insurance and hand-wrote $750,000 in the line where they were to indicate the dollar amount."  (Compl. ¶ 21.)  Mr. Kersh also placed question marks in the blocks for supplemental life insurance, short-term disability, and long-term disability insurance, and he sent a note asking for quotes on those offerings.  (Compl. Ex. B.)  Apparently by accident, Mr. Kersh did not list his

---

[1]  Plaintiff and Mr. Kersh wrote "7/18/11," which may have been an accident, since the Complaint says they filled the form out on August 18, 2011.  July 18, 2011, was Mr. Kersh's hire date.

wife's social security number where the form requested that information.  (See id.)

Plaintiffs faxed this form to Paychex on August 18, 2011, at 12:35 p.m.  (Id.)

On 10:21 a.m. on August 22, 2011, Walker emailed Leimbach to say

that "James [Mr. Kersh] is all set, just need that social to get his spouse enrolled."

(Compl. Ex. C.)  At 10:43 a.m., Leimbach forwarded Walker's email to Mr. Kersh,

instructing him to "please forward [his] wife's social to Dennis [Walker] at [his]

earliest convenience[.]"  (Id.)  At some point that same day, Mr. Kersh passed

away.  (Compl. ¶ 22.)

Mr. Kersh was on a direct-deposit system with Salto and received one

payment—on August 1, 2011, in the amount of $3.72—before he passed away.

(Compl. ¶ 22.)  After Mr. Kersh's death, Plaintiff received three additional

paystub-type direct-deposit documents, all of which indicated that deductions had

been made for Mr. Kersh's benefit package.  (Id. Ex. E.)  However, the

abbreviations on the paystubs make it difficult to discern precisely what the

deductions were for.[2]

On November 21, 2011, Plaintiff submitted a request for benefits to

UHC requesting payment of the $750,000 in insurance proceeds.  (Id. ¶ 23; Compl.

Ex. F.)  The Claimant's Statement portion of the claim form included a block for

---

[2] The deductions are listed as follows: "PADENEEDEN: $21.11";
"PAGTLEEGTL: $0.01"; "PAMEDEECMP: $134.77"; and "PAVISEEVIS:
$8.51."

the Group Policy Number; Plaintiff wrote "0724824."  (Compl. Ex. F.)  Section 2 of the form, entitled "Employer's Statement," includes a section titled "Authorized Official Must Sign Below."  (Id.)  However, the lines for the name, address, telephone number, and signature of the employer were left blank.  (Id.)

By letter dated January 24, 2012 ("Claim Decision Letter"), UHC approved benefits under Group Life Insurance Policy No. 0724824 for $15,014.00, stating that that amount "represent[ed] the proceeds payable to [Plaintiff] under the policy." (Compl. ¶ 23; id. Ex. G.)  The Claim Decision Letter also addressed Plaintiff's claim for $750,000, stating:

> Included with the initial claim submission was a letter dated November 21, 2011, signed by you, requesting an additional benefit for supplemental life in the amount of $750,000.00.  Please note that Salto Systems does not have any supplemental life with UnitedHealthcare Insurance Company that would provide for that additional benefit referenced in your letter.

(Compl. Ex. G.)  The letter informed Plaintiff that if she disagreed with the insurer's decision and wished to "appeal it, under the Employee Retirement Income Security Act of 1974 (ERISA), [she was] entitled to a full and fair review of the decision."  (Id.)  The letter also informed Plaintiff that if her "claim [was] not approved on review," she could bring a civil action under section 502(a) of ERISA.  (Id.)

Through a letter from her counsel to UHC's Appeals Department ("Appeal Letter"), Plaintiff appealed UHC's claims decision. (Compl. ¶ 24; id.

Ex. H.)  The Appeal Letter referenced policy number 0724824 and listed the

policyholder as Salto Systems, Inc.  (Compl. Ex. H.)  Plaintiff's counsel explained

in the letter that Mr. Kersh "did not seek to purchase 'supplemental life' as

suggested in the [Claim Letter].  Rather he bought $750,000 in basic life insurance

and his widow is making a claim for that amount."  (Id. (footnote omitted).)

UHC affirmed its previous decision by a letter dated May 7, 2012

("Appeal Denial Letter").  The letter stated that the only life insurance available to

employees of Salto, including Kersh, was the $15,000.00 benefit "financed by

Salto."  (Compl. ¶ 24, 28, 30.)  The letter also stated:

> In the course of our eligibility review, the attending life claims specialist received from Paychex, Inc., a UnitedHealthcare enrollment form signed July 18 2011 by both James and Debra Kersh.  This document does not show the $750,000 life insurance coverage election as indicated on the otherwise-identical enrollment form you presented as "Exhibit B" in your appeal request.

(Compl. ¶ 24; Resp. Ex. 2.)  Plaintiff alleges that someone at Paychex altered the

form that Mr. Kersh faxed on August 18, 2011—removing Mr. Kersh's

hand-written request for $750,000 in coverage—and then submitted the altered

version to UHC in order to avoid paying Plaintiff's claim.  (Compl. ¶ 33.)

On December 21, 2012, Plaintiff, individually and on behalf of Mr.

Kersh's estate, filed suit against Defendants in the 225th Judicial Court of Bexar

County, Texas.  (Doc. # 1-1 ("Compl.").)  The Complaint brought the following

causes of action:

(1)   breach of contract and wrongful denial of health insurance benefits against UHC, based on allegations that UHC was responsible for the misrepresentations made by Paychex and Walker regarding the available coverage and that UHC used a fraudulently altered enrollment registration form to deny the claim (Compl. ¶¶ 27–28);

(2)   negligence against Paychex and Walker, alleging that both Defendants "owed a duty to Plaintiffs to use reasonable diligence in procuring the insurance [they sought]" but gave "incorrect and/or misleading information upon which Plaintiffs reasonably relied," causing them harm (id. ¶ 29);

(3)   negligent misrepresentation against Paychex and Walker, alleging that Paychex and Walker "made representations in the course of the business of Defendant Paychex . . . which contained false information for the guidance of Plaintiffs in their business" and that "Plaintiffs reasonably relied on these representations to their detriment" (id. ¶¶ 31–32);

(4)   Texas Insurance Code Violations against Paychex and Walker based on their alleged misrepresentations before Plaintiffs submitted their enrollment form as well as "the efforts by Defendant Paychex and Defendant Walker to fraudulently alter the enrollment form" (id. ¶ 33);

(5)   violations of the Texas Deceptive Trade Practices Act (DTPA), Tex.

Bus. & Com. Code § 17.41 <u>et seq.</u>, by Paychex and Walker (<u>id.</u> ¶¶ 34–

35); and

(6)   intentional infliction of emotional distress by all Defendants, who

allegedly engaged in "extreme and outrageous conduct," causing

Plaintiff Debbie Kersh to suffer severe emotional distress (<u>id.</u> ¶ 36).

Defendants timely removed the case to this Court on January 18,

2013, asserting that federal jurisdiction was proper pursuant to both

28 U.S.C. § 1331 and 28 U.S.C § 1332.  (Doc. # 1.)  Defendant Paychex filed a

Motion to Dismiss for Failure to State a Claim and a Motion to Strike Jury Trial

Demand on January 25, 2013.  (Docs. ## 5, 6.)  Those Motions are now before the

Court.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a

complaint for "failure to state a claim upon which relief can be granted."  Review

is limited to the contents of the complaint and matters properly subject to judicial

notice.  <u>See</u> <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322

(2007).  In analyzing a motion to dismiss for failure to state a claim, "[t]he court

accepts 'all well-pleaded facts as true, viewing them in the light most favorable to

the plaintiff.'"  <u>In re Katrina Canal Breaches Litig.</u>, 495 F.3d 191, 205 (5th Cir.

2007) (quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004)).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss.  See Twombly, 550 U.S. at 555–56.  In providing grounds for relief, however, a plaintiff must do more than recite the formulaic elements of a cause of action.  See id. at 556–57.  "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  Iqbal, 556 U.S. at 678 (internal quotations and citations omitted). Thus, although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 (5th Cir. 1994); see also Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").

When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court."  <u>Twombly</u>, 550 U.S. at 558 (citation omitted).  However, the plaintiff should generally be given at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice.  <u>Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.</u>, 313 F.3d 305, 329 (5th Cir. 2002).

DISCUSSION

## I.    <u>Defendants' Motion to Dismiss</u>

Defendants argue that Plaintiff's state-law claims all arise out of and relate to a life insurance plan that was sponsored by Salto (the "Salto Plan"), which the parties agree is an employee welfare benefit plan governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 <u>et seq</u>.  (Doc. # 5 ("MTD") at 7.)  Accordingly, insist Defendants, Plaintiff's state-law claims "are completely preempted by ERISA and must be dismissed."  (<u>Id.</u>)  Defendants also argue that Plaintiff's state-law claims are subject to conflict preemption because they "relate to" an ERISA plan.  (<u>Id.</u> at 16–19.)

Plaintiff responds that ERISA does not preempt her claims because (1) her claims stem from the life insurance policy for $750,000 that she and Mr. Kersh believed they were purchasing (which Plaintiff insists may be distinguished from the $15,000 Salto Plan); and (2) even if the $750,000 policy is "related to" an

12

employee welfare benefit plan under ERISA, it falls within the scope of ERISA's safe-harbor Provision and is not preempted.  (Resp. at 2, 9–17.)

To rule on Defendants' Motion to Dismiss, therefore, the Court must first determine whether Plaintiff's state-law claims are preempted by ERISA.  For the reasons that follow, the Court concludes that Plaintiff's claims against UHC are preempted while her claims against the other Defendants are not.

A.  <u>The Salto Plan</u>

There is no dispute that the Salto Plan, the terms of which are set forth in the Salto Certificate (Compl. Ex. D), is an ERISA-governed employee welfare benefit plan.  (<u>See</u> Resp. at 8, 20.)  The company's endorsement of the plan is reflected in, <u>inter alia</u>, the title of the Salto Certificate: "UNITED HEALTHCARE INSURANCE COMPANY - LIFE INSURANCE - ACCIDENTAL DEATH, DISMEMBERMENT OR LOSS OF USE INSURANCE - CERTIFICATE FOR COVERAGE FOR SALTO SYSTEMS INC. - GROUP NUMBER: G/GA724824 BW - EFFECTIVE DATE: May 1, 2008."  (<u>Id.</u>)  Under the section entitled "Schedule of Benefits," the Salto Certificate states that "[a]ll full-time Employees" are eligible for $15,000 in life insurance benefits.  (<u>Id.</u> at 2.)  Beneath the box containing the policy limit of $15,000, the Salto Certificate states that "the Employee <u>may not apply for amounts of Insurance which exceed the Employee's eligible Life Insurance Benefit Amount that is stated above.</u>"  (<u>Id.</u> (emphasis

added).)  The Certificate also contains a section entitled "Statement of Employee

ERISA Rights," which explains, <u>inter alia</u>, that the covered employee has the right

to examine all Plan documents and the right to file suit in federal court to enforce

his or her rights under ERISA.  (<u>Id.</u> at 16.)

 B.  <u>ERISA Preemption</u>

  Defendants insist that Plaintiff's state-law claims are preempted by

ERISA.  There are two forms of ERISA preemption that may be applicable in this

case.

  1.  <u>"Complete" Preemption</u>

  First, under "complete" preemption, any state cause of action that

seeks relief within the scope of ERISA's civil enforcement section, § 502,

"regardless of how artfully pleaded as a state action," is removable to federal court.

<u>Giles v. NYLCare Health Plans, Inc.</u>, 172 F.3d 332, 337 (5th Cir. 1999); <u>Met. Life</u>

<u>Ins. Co. v. Taylor</u>, 481 U.S. 58, 66 (1987).  Section § 502(a)(1) provides, in

relevant part, that a participant or beneficiary of an ERISA-regulated plan may

bring a civil action "to recover benefits due to him under the terms of his plan, to

enforce his rights under the terms of the plan, or to clarify his rights to future

benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B); <u>see also</u>

<u>McGowin v. ManPower Int'l, Inc</u>., 363 F.3d 556, 559 (5th Cir. 2004) (holding that

"complete preemption exists when a remedy falls within the scope of or is in direct

conflict with [ERISA's civil enforcement section]").  If complete preemption

exists, a plaintiff's state claims are subject to removal based on federal-question

jurisdiction,[3] and ERISA offers the sole framework for relief.  See Aetna Health

Inc. v. Davila, 542 U.S. 200, 209 (2004).  In other words, a claim that is

completely preempted by ERISA is not automatically subject to dismissal; it is

subject to adjudication on its merits under the applicable provisions of ERISA.

       In Aetna Health Inc. v. Davila, 542 U.S. 200 (2004), the Supreme

Court stated the following conjunctive standard for determining whether a claim is

completely preempted: A suit "falls 'within the scope of' ERISA § 502(a)(1)(B)

. . . if [the] individual, at some point in time, could have brought his claim under

ERISA § 502(a)(1)(B) and where there is no other independent legal duty that is

implicated by a defendant's actions . . . ."  Id. at 210 (emphasis added).  The Court

explained, however, that ERISA need not strictly duplicate a state-law cause of

action in order for the state law to be preempted: "[A]ny state-law cause of action

that duplicates, supplements, or supplants the ERISA civil enforcement remedy

conflicts with the clear congressional intent to make the ERISA remedy exclusive

and is therefore pre-empted."  Id. at 209.  In that case, the Supreme Court

concluded that the plaintiffs' claims were completely preempted because they

---

[3] Note that Plaintiff's state-law claims need not be completely preempted in order for this Court to have jurisdiction; the parties are diverse, giving rise to jurisdiction under 28 U.S.C. § 1332.  (See doc. # 1 ¶¶ 7–11.)

"complain[ed] only about denials of coverage promised under the terms of ERISA-regulated employee benefit plans." Id. at 211.

### 2. "Conflict" Preemption

The second form of ERISA preemption, known as "conflict" or "defensive" preemption, exists when a state-law claim falls outside of the scope of § 502's civil enforcement provision but still "relates to" an ERISA plan under § 514. See 29 U.S.C. § 1144(a) (stating that ERISA provisions "shall supersede any and all state laws insofar as they may now or hereafter relate to any [ERISA] employee benefit plan . . . ."). A state-law cause of action that relates to an ERISA plan is preempted "even if the action arises under general state law that in and of itself has no impact on employee benefit plans." Cefalu v. B.F. Goodrich Co., 871 F.2d 1290, 1292 n.5 (5th Cir. 1989). "Rather than transmogrifying a state cause of action into a federal one—as occurs with complete preemption—conflict preemption serves as a defense to a state action." Giles, 172 F.3d at 337 (emphasis added). Accordingly, while conflict preemption does not create federal subject-matter jurisdiction over a state-law claim, it does require dismissal of that claim. See, e.g., Menchaca v. CNA Group Life Assurance Co., 331 F. App'x. 298, 304 (5th Cir. 2009) (per curiam) (upholding dismissal of state-law claims based on § 514 preemption); Jones v. LMR Intern., Inc., 457 F.3d 1174 (11th Cir. 2006)

("Unlike complete preemption, . . . defensive preemption is a substantive defense,

justifying dismissal of preempted state law claims.").

> The language of the ERISA preemption clause "is deliberately

expansive and has been construed broadly by federal courts."  Hubbard v. Blue

Cross & Blue Shield Ass'n, 42 F.3d 942, 945 (5th Cir. 1995) (citing Corcoran v.

United Healthcare, Inc., 965 F.2d 1321, 1328–29 (5th Cir. 1992)).  A state cause of

action "relates to" an employee benefit plan whenever it has "a connection with or

reference to such a plan."  Corcoran, 965 F.2d at 1329 (citing Shaw v. Delta Air

Lines, Inc., 463 U.S. 85, 96–97 (1983)).  Despite ERISA's broad "related to"

preemption, however, its reach is not "limitless."  Rozzell v. Security Servs., 38

F.3d 819, 822 (5th Cir. 1994) (citations omitted).  There are state-law claims that

are "too tenuous, remote, or peripheral . . . to warrant a finding that the [state] law

relates to the plan."  Shaw, 463 U.S. at 100 n.21.  Accordingly, the Fifth Circuit

has described a conjunctive test for conflict preemption, explaining that

> [s]tate law causes of action . . . are barred by § 1144(a) if (1) the state law
> claim addresses an area of exclusive federal concern, such as the right to
> receive benefits under the terms of an ERISA plan; and (2) the claim directly
> affects the relationship between the traditional ERISA entities—the
> employer, the plan and its fiduciaries, and the participants and beneficiaries.

Hubbard, 42 F.3d at 945 (emphasis added) (citing Weaver v. Employers

Underwriters, Inc., 13 F.3d 172, 176 (5th Cir. 1994)); Access Mediquip L.L.C. v.

UnitedHealthcare Ins. Co., 662 F.3d 376, 382 (5th Cir. 2011) (same), reh'g en banc

granted, 678 F.3d 940 (5th Cir. 2012), opinion reinstated in part on reh'g, 698 F.3d 229 (5th Cir. 2012), cert. denied, 133 S. Ct. 1467 (U.S. 2013).

    C.  The Causes of Action in the Complaint

       For the reasons that follow, the Court finds that Plaintiff's claims against UHC are preempted by ERISA; that Plaintiff's remaining claims are not preempted; that Plaintiff fails to state a claim for intentional infliction of emotional distress; and that Plaintiff does state claims for negligence, negligent misrepresentation, and violations of the Texas Insurance Code and the Deceptive Trade Practices Act against Paychex and Walker.

      1.  Breach of Contract and Wrongful Denial of Insurance Benefits
         Against UHC

       Plaintiff's first cause of action is one for breach of contract and wrongful denial of insurance benefits against Defendant UHC.  (Compl. ¶¶ 27–28.) Plaintiff insists that a valid contract was formed when she and Mr. Kersh submitted the enrollment form to Paychex, an agent of UHC.  (Compl. ¶ 27.)  UHC's enrollment form, argues Plaintiff, "ma[de] it clear that the Plaintiffs were authorized to select an amount of life insurance coverage they wished to purchase and the premiums would be taken out of Randy Kersh's paycheck."  (Id.) "Plaintiffs tendered performance by submitting the enrollment form," and UHC

"breached the insurance contract by failing to pay the $750,000 under the policy . . . ."  (Id.)

UHC argues that these claims "arise solely out of the administration of the Salto Plan and, therefore, are completely preempted."  (Doc. # 22 at 2.) First, UHC notes that Plaintiff contends that "Randy Kersh's death is a covered loss within the language of the policy" and that UHC "breached the insurance contract by failing to pay the $750,000 under the policy . . . ."  (Id. (quoting Compl. ¶ 27).)  "[O]ne would be hard pressed," states UHC, "to find language that more clearly implicates the doctrine of complete preemption."  (Doc. # 22 at 2.) Second, UHC argues that Plaintiff's claims are conflict preempted under § 514(a) since "she is seeking to recover damages based on United's administration of her benefit claim under the Salto Plan."  (Id. at 3–4.)

Plaintiff does not contest that the Salto Plan, providing for $15,000 in life insurance for Salto employees, is an ERISA-governed plan.  (Resp. at 11.) However, Plaintiff insists that this cause of action is not about the Salto Plan at all; it is about a separate, individual life insurance policy that Mr. Kersh purchased in the amount of $750,000:

> Unlike the group life insurance which may have been paid for by Salto for its full-time employees for coverage of a maximum of $15,000, the life insurance represented to be purchased individually in increments of "$4.95 per $15k" for a total of $750,000 was purchased by Mr. Kersh at his sole discretion.  He chose to pay the policy premium, which was to be deducted from his paycheck and transmitted to UnitedHealthcare.

(Id.)  In other words, Plaintiff argues that she is not seeking $750,000 under the terms of the Salto Plan, which she acknowledges is capped at $15,000; she is seeking to recover damages resulting from UHC's alleged breach of a separate contract for a life insurance policy with $750,000 in coverage.

The Fifth Circuit addressed and rejected a similar argument in Cefalu v. B.F. Goodrich Co., 871 F.2d 1290 (5th Cir. 1989).  In that case, Cefalu, an employee of B.F. Goodrich, sought to recover benefits that Goodrich orally promised him he would receive if he left employment with that company and opened a Goodrich retail franchise.  When he later discovered that his retirement plan did not provide for the promised benefits, Cefalu filed a state action for breach of an alleged oral contract, which was later removed to federal court.  Cefalu, in an argument echoing Plaintiff's, "concede[d] that [his] pension benefits were properly calculated" under the terms of the ERISA plan, id. at 1292, but argued that the separate oral contract entitled him to more:

> Cefalu further asserts that he is not seeking recovery from the assets of the ERISA plan or claiming more from the retirement program than the terms of the Plan specify.  Instead, Cefalu claims he is merely seeking recovery from Goodrich pursuant to a valid oral contract unrelated to the ERISA plan. Therefore, Cefalu contends that since his state law claim does not "relate to" an employee benefit plan, it is not preempted by ERISA.

Id. at 1293 (emphasis added).  The Fifth Circuit, based on its review of the case law and ERISA's legislative history, held that "[t]his contention [was] without

merit" and that Cefalu's breach-of-contract claim "related to" Goodrich's ERISA plan. Id. at 1292–93.  As the Fifth Circuit later explained, Cefalu "rejected the contention that preemption was avoided because the former employee was not seeking recovery from the plan itself or its assets, but only from his former employer." Lee v. E.I. DuPont de Nemours and Co., 894 F.2d 755, 757 (5th Cir. 1990); see also Memorial Hosp. System v. Northbrook Life Ins. Co., 904 F.2d 236, 245 (5th Cir. 1990) ("We have [] held in this circuit that ERISA preempts state law claims, based on breach of contract, fraud, or negligent misrepresentation, that have the effect of orally modifying the express terms of an ERISA plan and increasing plan benefits for participants or beneficiaries who claim to have been misled."); Olson v. Gen. Dynamics Corp., 960 F.2d 1418 (9th Cir. 1991) (holding that fraudulent oral misrepresentation of the level of benefits does not provide the basis for a non-preempted claim even though ERISA may also provide no remedy).

Similarly, in Anderson v. John Morrell & Co., 830 F.2d 872 (8th Cir. 1987), Anderson claimed he had accepted a management position after the defendant had assured him his fringe benefits would be as good as those he would have received had he remained a member of a union.  Id. at 873–74.  When this turned out not to be true, Anderson brought a breach-of-contract action under state law contending that the defendant's representations "amounted to an offered promise," which he accepted by performing work, resulting in a binding contract.

21

Id. at 874.  Anderson insisted that his state-law claim was not preempted by ERISA because he was not trying to enforce or clarify his rights under a benefit plan but was merely trying to establish contractual rights to have other benefits added to the plan.  Id. at 875.  The Eighth Circuit disagreed and found that plaintiff's state-law claim was preempted, stating:

> Anderson would distinguish between an action to recover benefits (or enforce his rights or clarify his rights to future benefits) under the terms of a plan as it exists (in which case state law is clearly preempted [. . .]) and an action to establish his contract right to have other benefits added to the plan (in which case he argues that state law applies). We think his distinction cannot stand, and conclude that principles of common law governing a claimed contract right to have the plan modified clearly "relates to" the plan and that state law in that area is preempted.

Id. at 875 (emphasis added).

Just like the plaintiffs in Cefalu and Anderson, Plaintiff is arguing, in essence, that the Court should distinguish between an action to recover benefits under the terms of an ERISA plan (here, the Salto Plan) and an action to establish Plaintiff's contractual right to have other benefits (here, a larger payout of $750,000) added to the plan.  Id.  While there may be some superficial appeal to Plaintiff's attempt to distinguish the Salto Plan from the $750,000 life insurance she and Mr. Kersh thought they were purchasing, the allegations in the Complaint and the exhibits attached thereto belie the contention that Plaintiff and Mr. Kersh believed they were signing up for an independent policy.  The Complaint and its exhibits make clear that, at all relevant times, Plaintiff and Mr. Kersh understood

that they were working with an agent of Salto—Ms. Leimbach, Salto's Director of

Human Resources—in order to obtain life insurance through Salto.

First, in the July 26, 2011 email that Plaintiff attaches to the

Complaint, Leimbach asked Walker and another Paychex employee whether life

insurance was available to "Salto employees."  (Compl. Ex. C.)  In response to

Leimbach's emails requesting clarification about coverage provided through the

Salto Plan, Walker explained that "[o]n page 9 of the attached renewal you can see

that your group offers $15,000 in total benefit.  The cost per month comes to $4.95

. . . ."  (Id.)  Plaintiff alleges that Ms. Leimbach forwarded Mr. Kersh this and all

other emails from Mr. Walker, making plain that the Kershes knew Leimbach was

inquiring about what coverage was available under the Salto Plan.  (Compl.

Ex. H ¶ 6; Resp. ¶ 6).)  That this is true is made even clearer by the email that

Leimbach then sent to Mr. Kersh:

> Hi Randy,
> The life insurance offered by Salto via Paychex costs 4.95 per $15,000
> payout, [sic] if you are interested let me know.  The completed health
> insurance enrollment form should be faxed to (585) 249–4029.
> Let me know if you need anything else.
> Linda

(Compl. Ex. C (emphasis added).)  While the Kershes may well have been

confused about whether more coverage was available (i.e., whether "$4.95 per

$15,000 payout" meant that the maximum coverage was $15,000 or whether

insurance could be procured in $15,000 increments), this email leaves no room for

doubt that the parties were discussing "[t]he life insurance <u>offered by Salto</u> . . . ."

Indeed, Plaintiff states in her Response to Defendants' Motion to Dismiss that Mr.

Kersh "was told in his initial employment offer that he could buy life insurance

<u>through the company</u>, but that he was solely responsible to pay the costs."

(Resp. at 25.)

        In addition to these emails, Plaintiff's claim for payment following

Mr. Kersh's death makes plain that Plaintiff knew that any life insurance Mr.

Kersh had signed up for was offered through Salto and the Salto Plan.

Specifically, after Mr. Kersh's death, Plaintiff submitted a Request for Group Life

Insurance Benefits to UHC requesting payment of the $750,000, and in the block

labeled "Group Policy Number," Plaintiff wrote "0724824"—the policy number of

the Salto Plan.  (Compl. Ex. F.)  Moreover, after Plaintiff's claim for $750,000 was

denied, Plaintiff's counsel submitted an Appeal Letter to UHC's Appeals

Department that also referenced policy number 0724824 and listed the

policyholder as Salto Systems, Inc.  (Compl. Ex. H.)

        The Court need not reach the merits of Plaintiff's breach-of-contract

claim to conclude that is it "related to" the Salto Plan.  As in <u>Cefalu</u> and <u>Anderson</u>,

the plain terms of the ERISA plan do not entitle Plaintiff to the amount she

requests.  (<u>See</u> Compl. Ex. D (stating, beneath the box listing the policy limit of

$15,000, that "the Employee may not apply for amounts of Insurance which

exceed the Employee's eligible Life Insurance Benefit Amount that is stated above").)  Like the plaintiffs in those cases, Plaintiff argues that her state-law claim "does not 'relate to' an employee benefit plan" because she is "seeking recovery . . . pursuant to a valid [] contract unrelated to the ERISA plan."  Cefalu, 871 F.2d at 1293.  While the contracts in Cefalu and Anderson were oral, the fact that the alleged contract in this case is written is immaterial; in both cases, the supposedly "unrelated" contract, if enforced, would increase the amount of benefits due the beneficiary beyond the amount for which the plan provided.  As in Cefalu and Anderson, therefore, Plaintiff's argument fails.  More generally, Plaintiff's breach-of-contract claim satisfies both prongs of the conjunctive test described in Hubbard: It addresses an area of exclusive federal concern (the right to receive benefits under an ERISA plan), and it directly affects the relationship between traditional ERISA entities (in this case, the relationship between a beneficiary and a fiduciary).  42 F.3d at 945; see also Bank of La. v. Aetna U.S. Healthcare Inc., 468 F.3d 237, 244 n.11 (5th Cir. 2006) ("A party acts in a fiduciary capacity when he: 1) exercises discretionary control over plan assets; 2) he renders investment advice for a fee to the plan; or 3) he has discretionary responsibility with regard to plan administration.").  Accordingly, Plaintiff's claim against UHC is related to an ERISA plan, is subject to conflict preemption, and must be dismissed.  See

Menchaca, 331 F. App'x. at 304 (upholding dismissal of state-law claims based on § 514 preemption).

2.   Plaintiff's Negligence Claim Against Paychex and Walker

Plaintiff's second cause of action is one for negligence, asserted against Paychex and Walker.  Plaintiff alleges that Paychex and Walker had "a duty to act with ordinary care and to use reasonable diligence in providing information about the subject life insurance and the means of securing the same, in securing the requested insurance[,] and in informing the Plaintiffs promptly if unable to do so."  (Compl. ¶ 29.)  Plaintiff further alleges that Paychex and Walker "breached these duties by giving incorrect and/or misleading information upon which Plaintiffs reasonably relied and/or by failing to place the insurance as requested and instead by participating in a bad faith scheme to alter the key enrollment form."  (Id.)  "These breaches have been the proximate cause of damages to the Plaintiffs," alleges the Complaint, because "[i]f Plaintiffs had been informed that they could not purchase life insurance from UnitedHealthcare, they would have purchased the same through another company."  (Id.)

Defendants argue that this and all of Plaintiff's other claims against Paychex and Walker must be dismissed because they are related to the Salto Plan.  (MTD at 19.)  Defendants insist "that '[t]he critical determination [is] whether the claim itself created a relationship between the plaintiff and defendant that is so

26

intertwined with an ERISA plan that it cannot be separated.'"  (Id. (quoting Bank

of La. v. Aetna U.S. Healthcare, Inc., 468 F.3d 237, 243 (5th Cir. 2006).)  Because

"Plaintiff's state law claims implicate the terms and administration of the Salto

Plan," argue Defendants, "those claims are so intertwined with the Salto Plan [that]

they are preempted."  (MTD at 19.)

        As a preliminary matter, the Court notes that the Fifth Circuit has

found that Congress did not intend for ERISA preemption to extend to state-law

tort claims brought against an independent insurance agent.  Perkins v. Time Ins.

Co., 898 F.2d 470, 473 (5th Cir. 1990).  In Perkins, the plaintiff alleged that an

independent insurance agent had fraudulently induced him to forfeit an insurance

policy that covered his daughter's condition for one that did not.  Id.  The Court

held that "a state law claim of that genre, which does not affect the relations among

the principal ERISA entities (the employer, the plan fiduciaries, the plan, and the

beneficiaries) as such, is not preempted by ERISA."  Id. (emphasis added).  "[A]

claim that an insurance agent fraudulently induced an insured to surrender

coverage under an existing policy, to participate in an ERISA plan which did not

provide the promised coverage," the court continued, "'relates to' that plan only

indirectly."  Id.; see also Chidester v. Quoyeser, 41 F.3d 664 (5th Cir. 1994)

(noting that the court's holding in Perkins "was based on our finding that the fraud

did not affect the relations among the principal ERISA entities") (alteration

omitted); Morstein v. Nat'l Ins. Servs., Inc., 93 F.3d 715, 722 (11th Cir. 1996)
(adopting "the rationale of the Fifth Circuit as stated in Perkins" and holding that a
state-law claim brought against an insurance agent, which is not an ERISA entity,
does not affect relations among principal ERISA entities and is not preempted by
ERISA).  By focusing on the fact that the insurance agent was not an ERISA
entity, the Fifth Circuit was, in essence, simply applying its standard two-prong
test for conflict preemption.  See Hubbard, 42 F.3d at 945 (explaining that
state-law causes of action are conflict preempted if (1) the claim addresses an area
of exclusive federal concern and (2) the claim directly affects the relationship
between the traditional ERISA entities).

       Under Perkins and the general test for conflict preemption, Plaintiff's
negligence claim against Paychex and Walker is not subject to conflict preemption.
First, unlike Plaintiff's breach-of-contract claim, this claim is not one that
addresses an area of exclusive federal concern, such as the distribution of benefits
under an ERISA plan.  Compare Transitional Hospitals Corp. v. Blue Cross and
Blue Shield of Tex., Inc., 164 F.3d 952, 955 (5th Cir. 1999) (holding that ERISA
did not preempt hospital's claims against ERISA plan administrator for
misrepresentation under Texas Insurance Code because hospital's claims were not
dependent on or derived from the beneficiary's right to recover benefits under the
plan), with Hermann Hospital v. MEBA Med. & Benefits Plan, 845 F.2d 1286,

1290 (5th Cir. 1988) (holding hospital's state-law claims for breach of fiduciary duty, negligence, equitable estoppel, breach of contract, and fraud were preempted by ERISA where the hospital sought to recover benefits owed to a plan participant who had assigned her right to plan benefits to the hospital); Hansen v. Continental Ins. Co., 940 F.2d 971 (5th Cir. 1991) (holding that claims for misrepresentation under Texas Insurance Code were preempted because the plaintiffs sought to recover benefits under an ERISA plan).  Instead of seeking insurance proceeds under the Salto Plan, Plaintiff's negligence claim seeks compensatory damages from Paychex and Walker based on their alleged negligence in failing to use reasonable diligence to procure the insurance that Plaintiff desired.  See McMurtry v. Wiseman, 445 F. Supp. 2d 756, 776–77 (W.D. Ky. 2006) (finding no preemption where plaintiff sought recovery not from the plan or an ERISA entity but from the insurance agent individually); Jewell v. Great Lakes Financial Partners, LLC, Nos. 5:06 CV 0941, 5:06 CV 0942, 2006 WL 1644351, at *2 (N.D. Ohio June 7, 2006) (same).  Plaintiff does not claim that Paychex's and Walker's negligence prevented her from obtaining the benefits she was due under the Salto Plan, and the Court would not have to interpret the terms of the Salto Plan to determine the extent of any damages.  Cf. Johnson v. Reserve Life Ins. Co., 761 F. Supp. 93, 95–96 (C.D. Cal. 1991) (employee's negligence claims against broker

preempted by ERISA because claims would require interpretation of ERISA plan to determine what benefits employee would have received but for negligence).

Moreover, neither Walker nor Paychex is a traditional ERISA entity. Walker and Paychex quite clearly are not the employer, the plan, participants, or beneficiaries; and because neither Walker nor Paychex exercises discretionary control over plan assets, renders investment advice to the plan, or has discretionary responsibility with regard to plan administration (at least according to the information currently before the Court), neither is an ERISA fiduciary. See Bank of La., 468 F.3d at 244. Even if Plaintiff prevailed on her negligence claim against Paychex and Walker, therefore, it would not affect the relationship between traditional ERISA entities or impact the structure or administration of the Salto Plan. Cf. Hubbard, 42 F.3d at 947 (finding important whether the state-law claims are "bound up with interpretation and administration of the ERISA plan"). Accordingly, the Court concludes that Plaintiff's negligence claim is not conflict preempted.

To maintain a negligence cause of action, a plaintiff must show (1) a legal duty owed by the defendant to the plaintiff; (2) a breach of the duty; and (3) damages proximately caused by the breach. D. Houston, Inc. v. Love, 92 S.W.3d 450, 454 (Tex. 2002). "It is established in Texas that an insurance agent who undertakes to procure insurance for another owes a duty to a client to use

reasonable diligence in attempting to place the requested insurance and to inform the client promptly if unable to do so." May v. United Servs. Ass'n of Am., 844 S.W.2d 666, 669 (Tex. 1992).  In other words, an insurance agent's duty to a client "arises from the agent's or broker's contract to procure coverage for the client."  49 Causes of Action 2d § 5 (2011).

Plaintiff insists that Walker and Paychex had a duty to Mr. Kersh (Compl. ¶ 29), but that is a legal conclusion that the Court need not accept as true for purposes of a motion to dismiss.  See Fareed v. Accreditation Council for Graduate Med. Educ., --- F. Supp. 2d ---, 2012 WL 5462600, at *5 (S.D. Tex. Aug. 1, 2012) (dismissing the plaintiff's negligence cause of action where the complaint "fail[ed] to allege any facts, as opposed to legal conclusions," in support of the claim that the defendants owed him a duty").  Instead, "[t]he existence of a legal duty is a determination made by the court as a matter of law."  Fareed, 2012 WL 5462600, at *4 (S.D. Tex. Aug. 1, 2012) (citing Nabors Drilling, U.S.A. v. Escoto, 288 S.W.3d 401, 404 (Tex. 2009).  For the reasons just stated, the duty that an insurance agent owes to a client arises from the agent's agreement to procure coverage for the client.  Accordingly, the Court's initial inquiry is whether Plaintiff has pleaded facts that, if true, would establish that Walker or Paychex agreed to procure $750,000 in coverage for Mr. Kersh.

Plaintiff has done so.  Plaintiff has alleged that Walker told Mr. Kersh, through Leimbach, to fax his enrollment form to Paychex.  (Compl. ¶ 18.) Plaintiff has alleged that Mr. Kersh faxed his enrollment form to Paychex on August 18, 2011, and that the form indicated that he was requesting $750,000 in life insurance.  (Id. ¶ 21.)  And Plaintiff has alleged that on August 22, 2011, Walker emailed Leimbach to say that Mr. Kersh was "all set" and that Walker "just need[ed] that social to get [Kersh's] spouse enrolled."  (Compl. Ex. C.)  These allegations, if proven, may be sufficient to establish that Walker agreed to procure insurance for Mr. Kersh, giving rise to a duty "to use reasonable diligence in attempting to place the requested insurance and to inform the client promptly if unable to do so."  May, 844 S.W.2d at 669.

If Plaintiff can prove that Mr. Kersh did request $750,000 in life insurance on his enrollment form, a jury could find that Walker was negligent for failing to procure said insurance or, at the very least, for failing to inform Mr. Kersh in a timely manner that he would be unable to do so and instead telling him that he was "all set."  See Burroughs v. Bunch, 210 S.W.2d 211, 214 (Tex. App. 1948) (holding agent liable for fire damage to the house his customer was building when the agent, after agreeing to have a builder's risk policy issued on the house, failed to notify the customer that he had not procured such a policy); Scott v. Conner, 403 S.W.2d 453, 458 (Tex. App. 1966) (holding agent liable for fire

32

damage after his customer requested a new policy to replace one cancelled by the insurer, and the agent neither procured such a replacement policy nor alerted the customer to this failure by returning the unearned portion of the premium from the original policy).  Accordingly, Plaintiff has stated a claim for negligence, and Defendants' motion to dismiss is denied as to that claim.

### 3.  Plaintiff's Negligent Misrepresentation Claim Against Paychex and Walker

Plaintiff's third cause of action is one for negligent misrepresentation against Paychex and Walker.  To state a claim for negligent misrepresentation, a plaintiff must allege that "(1) the defendant made a representation in the course of its business or in a transaction in which it had an interest, (2) the defendant supplied false information for the guidance of others in their business, (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information, and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation." Cunningham v. Tarski, 365 S.W.3d 179, 186–87 (Tex. App. 2012).  Plaintiff alleges that Paychex and Walker made false representations in the course of their business when Walker, as Paychex's agent, "sent a written communication that was intended to reach Plaintiffs and did reach Plaintiffs explaining that additional life insurance was available at $4.95 per $15,000 in coverage."  (Compl. ¶ 30.)  Plaintiff alleges that Walker did not

exercise reasonable care or competence when he made these statements and that

Plaintiff and Mr. Kersh "reasonably relied on these representations to their

detriment . . . ." (Id.)  Plaintiff alleges that if she and Mr. Kersh had been informed

that they could not purchase $750,000 in life insurance from UHC, "they would

have purchased the same through another company." (Id.)

　　　　　For the reasons given in the preceding section, this state-law claim,

which is brought against non-ERISA entities and does not seek benefits under an

ERISA plan, is not subject to conflict preemption.  See Access Mediquip, 662 F.3d

at 385 (holding that third party's suit against plan administrator for

misrepresentation was not related to ERISA plan because "[t]he finder of fact need

only determine (1) the amount and terms of reimbursement that [plaintiff] could

reasonably have expected given what could fairly be inferred from [defendant's]

statements, and (2) whether [defendant's] subsequent disposition of the

reimbursement claims was consistent with that expectation"); Wilson v. Zoellner,

114 F.3d 713 (8th Cir. 1997) (holding insured's claim against insurance agent for

negligent misrepresentation not preempted by ERISA; agent told insured he would

be covered for work-related injuries when he in fact was not).  Again, the real

question is whether Plaintiff has stated a claim.

A negligent misrepresentation cause of action need not be pleaded with particularity unless it is based on the same operative facts as a fraud claim. Lone Star Fund v. Barclays Bank, 594 F.3d 383, 387, 387 n.3 (5th Cir. 2010); see also Am. Realty Trust, Inc. v. Hamilton Lane Advisors, Inc., 115 F. App'x 662, 668–69 (5th Cir. 2004) ("[I]t was error for the district court to dismiss plaintiffs' negligent misrepresentation claims for failure to plead with particularity."). Plaintiff's negligent misrepresentation claim is not based on the same allegations as a fraud claim, so it is subject only to the liberal pleading standards of Rule 8(a).

Defendants do not seem to contest that Plaintiff has adequately alleged some of the elements of a negligent misrepresentation claim. First, Plaintiff has alleged that Walker made representations about the amount of life insurance available "in the course of his business" as an insurance agent. (Compl. ¶ 30.) Second, Plaintiff has alleged that Walker supplied the information about the life insurance available in order to guide Plaintiff and Mr. Kersh, who were seeking life insurance.[4] (Id.)   Third, Plaintiff has alleged that Walker did not

---

[4]  The fact that Walker did not communicate directly with Plaintiff or Mr. Kersh does not doom Plaintiff's claim for negligent misrepresentation.  As the Texas Supreme Court has made clear, "[t]he theory of negligent misrepresentation permits plaintiffs who are not parties to a contract for professional services to recover from the contracting professionals." McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests, 991 S.W.2d 787 (Tex. 1999).  This is so because "liability is not based on the breach of duty owed by a professional to his client or others in privity" but on "'the professional's manifest awareness of the nonclient's reliance on the misrepresentation and the professional's intention that the nonclient

exercise reasonable care or competence in obtaining or communicating the

information.  (Id.)  And finally, Plaintiff alleges that Walker's misrepresentations

were "the proximate cause of damages to the Plaintiffs," who would have

purchased life insurance through another company had they realized that they

could obtain just $15,000 in coverage through Paychex and UHC.[5]  (Id.)  See

Brown, 317 S.W.3d at 387 ("Evidence that a misrepresentation as to the terms or

benefits of coverage prevented an insured from taking steps to prevent a loss is

sufficient to support a jury finding that the misrepresentation was a producing

cause of damages.").

      Nevertheless, Defendants insist that Plaintiff's claim must be

dismissed because she does not allege that Walker provided any false

information—and, accordingly, that she does not adequately allege the second

---

so rely.'"  Wright v. Sydow, 173 S.W.3d 534, 554 (Tex. App. 2004) (quoting
McCamish, 991, S.W.2d at 792); see also Restatement (Second) of
Torts § 552(2)(a) (limiting liability to losses suffered "by the person or one of a
limited group of persons for whose benefit and guidance he intends to supply the
information or knows that the recipient intends to supply it") (emphasis added).
Thus, Plaintiff may recover under a theory of negligent misrepresentation even if
she and Mr. Kersh were not in privity of contract with Walker or Paychex, so long
as Walker knew or should have known that Mr. Kersh would rely on his
statements.

[5] The Court recognizes that this is the weakest part of Plaintiff's claim given the
very short amount of time between the alleged misrepresentations and Mr. Kersh's
death; however, whether the Kershes were actually harmed by the alleged
representations—whether they would have been able to procure more than $15,000
in life insurance from another company before Mr. Kersh's death—is a question
for the jury.

element of a negligent misrepresentation claim.  (MTD at 22.)  "[T]o prove

negligent misrepresentation," they claim, "a plaintiff must establish that the

defendant gave <u>false</u> in formation"; "[m]isleading but not false information is

insufficient . . . ."  (MTD at 22.)

          While at least one Texas court has agreed with Defendants'

contention, <u>see</u> <u>Continental Savings Ass'n v. Collins</u>, 814 S.W.2d 829, 833 (Tex.

App. 1991) (holding that "the furnishing of misleading information" cannot

support a claim for negligent misrepresentation; the information must be "false"),

that court cited no precedent and relied solely on the supposedly plain language of

the Restatement (Second) of Torts.  <u>See</u> <u>id.</u> at 833 (noting that § 552 of the

Restatement refers to "false" information).  The commentary on that section of the

Restatement contradicts that court's strict interpretation of the word "false,"

explaining that the professional "must exercise reasonable care and competence in

communicating the information so that it may be understood by the recipient" and

to ensure that "information accurately obtained [is not] so communicated as to be

<u>misleading</u>."  Restatement (Second) Torts § 552 cmt. f (emphasis added).

Moreover, other Texas courts have used the terms "false" and "misleading"

interchangeably when discussing negligent misrepresentation claims.  <u>See, e.g.</u>,

<u>K3C Inc. v. Bank of Am., N.A.</u>, 204 F. App'x 455, 462 (5th Cir. 2006) (holding,

under Texas law, that appellants "could not have prevailed on the merits of their

negligent misrepresentation claim" because they had "not identified any statements of fact by BOA that were actually false . . . [or] so incomplete as to be misleading") (emphasis added); Hagans v. Woodruff, 830 S.W.2d 732, 736 (Tex. App. 1992) ("The controlling issue in appellants' claim for negligent misrepresentation was whether appellants provided any false or misleading information.") (emphasis added); Blue Bell, Inc. v. Peat, Marwick, Mitchell & Co., 715 S.W.2d 408 (Tex. App. 1986) (denying summary judgment on negligent misrepresentation claim because defendant "failed to negate a fact issue concerning whether [it] provided false or misleading information") (emphasis added).  Accordingly, the Court rejects Defendants' contention that Texas law would permit a defendant to escape liability for making an egregiously misleading statement on which he knew another would rely simply because in some narrow, technical sense the statement could be considered true.

          At this stage, however, any distinction between false and misleading statements is irrelevant, because Plaintiff does allege that Defendant Walker made a false statement.  The Complaint alleges that Walker "sent a written communication that was intended to reach Plaintiffs and did reach Plaintiffs explaining that additional life insurance was available at $4.95 per $15,000 in coverage."  (Compl. ¶ 30.)  Defendants did not argue in their papers or at the hearing that this is true (i.e., that Mr. Kersh could have procured insurance

coverage at a rate of $4.95 per $15,000 payout); accordingly, if Walker really made such a representation, it was a false statement.

Defendants argued at the hearing that this Court should look at the documents attached to the Complaint to determine whether any false statements were made and dismiss Plaintiff's claim if none were.  They pointed to <u>Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC</u>, 594 F.3d 383 (5th Cir. 2010), in which the Fifth Circuit affirmed the district court's dismissal of a negligent misrepresentation claim under Rule 12(b)(6) where, in light of the complaint and the documents on which it relied, the defendant had made "no actionable misrepresentations."  <u>Id.</u> at 388–89.  In <u>Lone Star</u>, however, there was no question as to precisely which statements the plaintiffs were basing their claims on, and the court concluded that those statements—certain provisions of a prospectus—when viewed in context, did not make the misrepresentations plaintiffs alleged.  <u>Id.</u> at 389.  In this case, by contrast, Plaintiff has alleged that Walker made a statement that Defendants do not dispute would have been false: that Mr. Kersh could obtain life insurance at a rate of $4.95 per $15,000 payout.  While Plaintiff does not attach a copy of that "written communication" to the Complaint, Plaintiff's ability to prove that Walker made such a statement is a question for summary judgment, not a 12(b)(6) motion.  Plaintiff has adequately alleged that Walker made a false statement in the course of his business and that she and Mr. Kersh relied on that

false statement to their detriment.  Accordingly, Defendants' motion to dismiss is

denied as to this claim.

    4.  <u>Plaintiff's Texas Insurance Code Claims Against Paychex and</u>

        <u>Walker</u>

       Plaintiff's fourth cause of action is against Paychex and Walker for

violations of the Texas Insurance Code, Tex. Ins. Code § 541.001 <u>et seq.</u>  The

Texas Insurance Code provides, in relevant part:

> It is an unfair method of competition or an unfair or deceptive act or practice
> in the business of insurance to misrepresent an insurance policy by:
> (1) making an untrue statement of material fact;
> (2) failing to state a material fact necessary to make other statements
> made not misleading, considering the circumstances under which the
> statements were made;
> (3) making a statement in a manner that would mislead a reasonably
> prudent person to a false conclusion of a material fact;
> […]

Tex. Ins. Code § 541.061.

       Plaintiff alleges that Paychex and Walker violated the Insurance Code

when they (1) misrepresented the nature and terms of an insurance policy; (2)

provided false information and advertising; (3) made misrepresentations regarding

the benefits, advantages, or dividends of a policy; (4) made a misrepresentation

that induced a policy holder to allow an existing policy to lapse or to forego

insurance; (5) made an untrue statement of material fact; (6) failed to state a

material fact necessary to make other statements not misleading; and (7) made a

statement in such a manner as to mislead a reasonably prudent person to a false conclusion of a material fact.  (Compl. ¶ 32.)  Plaintiff bases these claims both on Walker's alleged misrepresentations during the enrollment phase and on Walker's or another Paychex employee's alleged fraudulent alteration of Mr. Kersh's enrollment form.  (Id. ¶ 31.)

Defendants argue that these claims, like all others in the Complaint, relate to the Salto Plan and are therefore subject to conflict preemption.  (MTD at 19.)  While some claims brought under the Texas Insurance Code are preempted by ERISA, see, e.g., Hansen v. Continental Ins. Co., 940 F.2d 971 (5th Cir. 1991) (holding that claims for misrepresentation under Texas Insurance Code were preempted because the plaintiffs sought to recover benefits under an ERISA plan), such preemption is not automatic.  Instead, the preemption inquiry is the same as with any other state-law claim: A court must ask whether the cause of action addresses an area of exclusive federal concern and whether it directly affects the relationship between the traditional ERISA entities.  Accordingly, courts have held that claims under the Texas Insurance Code are not preempted where the claim is not premised on the right to recover benefits under the terms of an ERISA plan. See, e.g., Transitional Hospitals Corp. v. Blue Cross, 164 F.3d 952, 955 (5th Cir.1999) (holding plaintiff's "state-law claims alleging common law misrepresentation and statutory misrepresentation under the Texas Insurance Code

41

Art. 21.21" not preempted because they were "not dependent on . . . [the] right to recover benefits under the [ERISA] plan").  For the reasons given above—namely, that this claim is not against an ERISA entity and does not seek benefits under the Salto Plan—the Court finds no support for Defendants' contention that this claim is preempted by ERISA.

In the alternative, Defendants insist that Plaintiff has no standing to pursue a claim under the Texas Insurance Code because such claims do not survive a decedent's death and cannot be brought by a representative of the decedent's estate as a matter of law.  (Id. at 26.)  It is true that Texas courts are split on the issue of whether claims under the Texas Insurance Code survive the decedent.  See Launius v. Allstate Ins. Co., Civ. No. 3:06-CV-0579-B, 2007 WL 1135347, at *3 (N.D. Tex. April 17, 2007) (collecting Texas cases and noting disagreement on issue of survivability).  As a named beneficiary of Mr. Kersh's life insurance policy, however, Plaintiff's claim is direct; issues of assignability are inapposite. See Williams v. Certain Underwriters at Lloyd's of London, 398 F. App'x 44, 47 (5th Cir. 2010) (citations omitted) ("A plaintiff has standing to sue under an insurance policy if the plaintiff is a named insured or an additional named insured or if the plaintiff is an intended third-party beneficiary of the policy."); Mendoza v. Am. Nat. Ins. Co., 932 S.W.2d 605 (Tex. App. 1996) (holding that insured's widow, as beneficiary of life insurance policy, had standing as an injured person

under the Insurance Code).  Accordingly, the Court rejects Defendants' contention that Plaintiff does not have standing to pursue a claim under the Texas Insurance Code.

To state a claim under Chapter 541 of the Texas Insurance Code, Plaintiff must allege that (1) she is a "person" as defined by Section 541.002(2) of the Texas Insurance Code; (2) Defendants are "persons" as defined by Section 541.002(2) of the Texas Insurance Code; (3) Defendants engaged in an act or practice that violated (a) Chapter 541, subchapter B, of the Texas Insurance Code (§§ 541.051–541.061) or (b) Section 17.46 of the Texas Business and Commerce Code, if Plaintiff relied on the act or practice to her detriment; and (4) the Defendants' act or practice was a producing cause of Plaintiff's actual damages. Tex. Ins. Code §§ 541.002(2), 541.151.

Plaintiff has adequately alleged all four elements.  First, Plaintiff, Walker, and Paychex are all "persons" under Section 541.002(2) of the Texas Insurance Code, which defines "person" as:

> an individual, corporation, association, partnership, reciprocal or interinsurance exchange, Lloyd's plan, fraternal benefit society, or other legal entity engaged in the business of insurance, including an agent, broker, adjuster, or life and health insurance counselor.

Tex. Ins. Code. § 541.002(2); see also Aspen Specialty Ins. Co. v. Muniz Eng'g, Inc., 514 F. Supp. 2d 972, 983 (S.D. Tex. 2007) ("Agents are 'persons' engaged in the business of insurance for the purposes of the Insurance Code.").

43

Second, Plaintiff has alleged that Defendant Walker, an agent of Paychex, violated Chapter 541, subchapter B, of the Texas Insurance Code. Section 541.061 prohibits a covered person from "misrepresent[ing] an insurance policy by . . . (1) making an untrue statement of material fact; (2) failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made; [or] (3) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact . . . ."  Plaintiff alleges that Walker made a written representation that life insurance was available at a rate of $4.95 per $15,000 payout, which would constitute an untrue statement of material fact in violation of § 541.061(1).  Moreover, the Court is not convinced that Plaintiff could prove no set of facts that would entitle her to relief under § 541.061(2) or (3) based on certain of Walker's communications with Leimbach, which may have been made "in a manner that would mislead a reasonably prudent person to a false conclusion of material fact . . . ."

Finally, Plaintiff satisfies the fourth element by alleging that Walker's statements, on which she and Mr. Kersh relied, prevented her and Mr. Kersh from obtaining adequate life insurance elsewhere.  See Brown, 317 S.W.3d at 387 ("Evidence that a misrepresentation as to the terms or benefits of coverage prevented an insured from taking steps to prevent a loss is sufficient to support a

jury finding that the misrepresentation was a producing cause of damages."). Again, whether the Kershes were actually harmed by the alleged representations— whether they would have been able to procure more than $15,000 in life insurance from another company before Mr. Kersh's death—is a question for the jury. Accordingly, Plaintiff states a claim under the Texas Insurance Code, and Defendants' motion to dismiss is denied as to this claim.

### 5.  Plaintiff's DTPA Claims Against Paychex and Walker

Plaintiff's fifth cause of action alleges that Paychex and Walker violated the Texas Deceptive Trade Practices Act ("DTPA"), Tex. Bus. & Com. Code § 17.41 et seq.  Plaintiff alleges that Paychex and Walker violated the DTPA when they (1) caused "confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services"; (2) represented "that goods or services had . . . benefits . . . which they [did] not have"; (3) represented "that an agreement confer[red] or involve[d] rights, remedies, or obligations which it [did] not have or involve"; and (4) "fail[ed] to disclose information concerning goods or services which was known by Defendant[s] . . . when such failure was intended to induce the Plaintiffs into a transaction into which the Plaintiffs would not have entered had the information been disclosed."  (Compl. ¶ 34.)  Defendants again argue that this claim is preempted by ERISA (MTD at 24–25); again, for the reasons given in the preceding section, the Court rejects that contention.

The elements of a DTPA claim are (1) the plaintiff is a consumer; (2) the defendant committed a false, misleading, or deceptive act; and (3) the act caused the consumer's damages.  Tex. Bus. & Com. Code Ann. §§ 17.45(4), 17.50(a); see also Brown & Brown of Tex., Inc. v. Omni Metals, Inc., 317 S.W.3d 361, 387 (Tex. App. 2010) ("Under the DTPA, a consumer may bring an action when he has relied to his detriment on a false or misleading representation, and the reliance is a producing cause of damages.").

The question of consumer status under the DTPA is question of law for the court to decide.  Lukasik v. San Antonio Blue Haven Pools, Inc., 21 S.W.3d 394, 401 (Tex. App. 2000).  As the court explained in Bohls v. Oakes, "[p]laintiffs establish their standing as consumers by their relationship to the transaction, not by a contractual relationship with the defendant."  Bohls v. Oakes, 75 S.W.3d 473, 479 (Tex. App. 2002) (citing Kennedy v. Sale, 689 S.W.2d 890, 892–93 (Tex. 1985)).  "A third party beneficiary may qualify as a consumer of goods or services, as long as the transaction was specifically required by or intended to benefit the third party and the good or service was rendered to benefit the third party."  Bohls, 75 S.W.3d at 479; see also Bynum v. Prudential Residential Servs., L.P., 129 S.W.3d 781, 793 (Tex. App. 2004) (acknowledging that third-party beneficiaries of a contract have standing to sue under the DTPA); Kennedy, 689 S.W.2d at 892–93 (holding that employee was consumer of medical insurance purchased by employer

for employee's benefit); <u>Wellborn v. Sears, Roebuck & Co.</u>, 970 F.2d 1420, (5th Cir. 1992) (holding that son of woman who bought garage door opener was a consumer because primary purpose of the purchase and installation into home was to benefit son). Because Plaintiff was an intended third-party beneficiary of the life insurance that Mr. Kersh was seeking, she qualifies as a consumer and has standing to sue under the DTPA.[6]

For much the same reason that Plaintiff states a claim for negligent misrepresentation and under the Texas Insurance Code, Plaintiff also states a claim under the DTPA: She has alleged that Walker made misrepresentations regarding the amount of insurance available to Mr. Kersh and that she and Mr. Kersh relied on those misrepresentations to their detriment (<u>i.e.</u>, by not purchasing insurance from another source). Walker's alleged misrepresentations, if proven, may constitute violations of, <u>inter alia</u>, the DTPA's prohibition against "representing that goods or services have . . . characteristics, . . . benefits, or quantities which they do not have . . . ." Tex. Bus. & Com. Code § 17.46(b)(5). Accordingly, Plaintiff states a claim under the DTPA, and Defendants' motion to dismiss is denied as to this cause of action.

---

[6] Defendants again argue that Plaintiff cannot bring a DTPA claim on behalf of Mr. Kersh's estate because such claims are not survivable. (MTD at 24–25.) Again, however, Defendants' argument misses the mark: Plaintiff has standing to bring a DTPA claim on her own behalf, because she qualifies as a "consumer."

6. <u>Plaintiff's Claim Against All Defendants for Intentional Infliction of Emotional Distress</u>

Plaintiff's final cause of action, asserted against all Defendants, is for intentional infliction of emotional distress ("IIED").  (Compl. ¶ 36.)  Courts have uniformly held that claims for IIED based on an ERISA entity's refusal to pay benefits are preempted.  <u>See</u> <u>Burks v. Amerada Hess Corp.</u>, 8 F.3d 301, 305 (5th Cir. 1993) ("[A] cause of action for infliction of emotional distress arising from the denial of employee benefits is preempted by ERISA.") (citing <u>Brown v. Sw. Bell Tel. Co.</u>, 901 F.2d 1250, 1254 (5th Cir. 1990), <u>abrogated on other grounds by</u> <u>Giles v. NYLCare Health Plans, Inc.</u>, 172 F.3d 332, 338 (5th Cir. 1999); <u>Dishman v. UNUM Life Ins. Co. of Am.</u>, 269 F.3d 974, 983 (9th Cir. 2001) ("[T]o find Prudential liable for intentional infliction of emotional distress for not paying benefits would be tantamount to compelling benefits, which assuredly encroaches on the relationships regulated by ERISA.") (internal quotation marks omitted).  Accordingly, for the reasons given in the discussion of Plaintiff's breach-of-contract claim against UHC, Plaintiff's IIED claim against UHC is also preempted by ERISA.

While Plaintiff's IIED claim against the remaining Defendants— Paychex and Walker—is not preempted by ERISA, her claim still must be dismissed: Under Texas law, IIED "is a 'gap-filler' tort, allowing recovery in the

rare instances in which a defendant intentionally inflicts severe emotional distress in an unusual manner so the victim has no other recognized theory of redress." Von Beck-Lutes v. Arning, 484 F. Supp. 2d 585, 588 (W.D. Tex. 2007); see also Hoffmann–La Roche, Inc. v. Zeltwanger, 144 S.W.3d 438, 447 (Tex. 2004) ("Where the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available."). As the rest of this Order makes clear, the gravamen of Plaintiff's Complaint is really other torts: negligence, negligent misrepresentation, and violations of the Texas Insurance Code and DTPA. The conduct on which Plaintiff's IIED claim is based is the same conduct that underlies her other claims. Accordingly, even assuming that the alleged conduct is sufficiently "extreme and outrageous," Plaintiff's IIED claim fails under Texas law and must be dismissed. See Stewart v. Lexicon Genetics, Inc., 279 S.W.3d 364, 372 (Tex. App. 2009) (affirming district court's grant of summary judgment on IIED claim where "[n]one of the alleged extreme and outrageous conduct [was] independent of the conduct that forms the basis of the other torts asserted in the petition").

II.    Defendants' Motion to Strike Plaintiff's Jury Trial Demand

Also before the Court is Defendants' Motion to Strike Jury Trial Demand. (Doc # 6.) Defendants insist that Plaintiff is not entitled to a jury trial because there is no right to a jury trial for ERISA claims. While it is correct that

ERISA claims do not entitle a plaintiff to a jury trial, see Borst v. Chevron Corp., 36 F.3d 1308, 1324 (5th Cir. 1994), not all of Plaintiff's claims are preempted by ERISA.  Accordingly, the Court denies Defendants' Motion to Strike Jury Trial Demand.  (Doc. # 6.)

III.    Leave to Amend

Plaintiff requests that "if this Court determines that Plaintiffs' common law claims are preempted under ERISA," she be "grant[ed] leave to amend the complaint pursuant to [Federal Rule of Civil Procedure] 15(a)." (Resp. at 3–4.)  Federal Rule of Civil Procedure 15 states that leave to amend pleadings "shall be freely given when justice so requires."  In determining whether to grant leave, "a district court may consider such factors as (1) undue delay; (2) bad faith; (3) dilatory motive on the part of the movant; (4) repeated failure to cure deficiencies by any previously allowed amendment; (5) undue prejudice to the opposing party; and (6) futility of amendment."  Ellis v. Liberty Life Assur. Co. of Boston, 394 F.3d 262, 268 (5th Cir. 2004).

The Court has found that Plaintiff's breach-of-contract/wrongful denial of benefits claim and IIED claim against UHC are preempted by ERISA. However, it would be futile to amend either claim.  First, for the reasons given above, Plaintiff's IIED claim fails under Texas law, and IIED claims are not cognizable under ERISA § 502.  Second, while § 502 permits a participant or

beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan," Plaintiff's counsel conceded at the hearing that Plaintiff has already received the maximum amount payable under the Salto Plan—$15,000.  Accordingly, the Court can conceive of no additional claim that Plaintiff could bring under § 502 "to recover benefits" under the plan. Because amendment would be futile, the Court denies Plaintiff's request for leave to amend the Complaint.

<u>CONCLUSION</u>

For the reasons given, the Court **GRANTS IN PART AND DENIES IN PART** Paychex's Motion to Dismiss (doc. # 5) and **DENIES** Paychex's Motion to Strike Jury Trial Demand (doc. # 6).

**IT IS SO ORDERED**.

**DATED**:  San Antonio, Texas, May 23, 2013.

_____
David Alan Ezra
Senior United States District Judge